UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

DONNA ROSSI                          :
                                     :
            v.                       :        C.A. No. 05-306A
                                     :
JO ANNE B. BARNHART,                 :
Commissioner of the Social Security  :
Administration                       :

## MEMORANDUM AND ORDER

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income ("SSI") under the Social Security Act ("Act"), 42 U.S.C. § 405(g).  Plaintiff filed her Complaint on July 11, 2005 seeking to reverse the decision of the Commissioner or, in the alternative, to remand for further proceedings.  Plaintiff filed a Motion to Reverse and/or to Remand on June 7, 2006.  The Defendant filed a Motion for an Order Affirming the Decision of the Commissioner on August 7, 2006.

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  Based upon my review of the entire record, independent legal research, and the legal memoranda filed by the parties, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document

No. 14) be GRANTED and that Plaintiff's Motion to Reverse and/or Remand (Document No. 11) be DENIED.

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for SSI on June 17, 2002, alleging an inability to work since March 25, 2002 (Tr. 96-99) due to depression, forgetfulness, anxiety attacks, post-traumatic stress disorder and migraine headaches.  (Tr. 110, 135, 137, 141).  The application was denied initially on October 30, 2002 (Tr. 64-67) and on reconsideration on March 18, 2003.  (Tr. 71-73).  Plaintiff requested an administrative hearing, and on June 2, 2004, a hearing was held before Administrative Law Judge Barry H. Best (the "ALJ"), at which Plaintiff, represented by counsel and a vocational expert appeared and testified.  (Tr. 28-61).  On October 28, 2004, the ALJ issued a decision finding that Plaintiff was not disabled.  (Tr. 15-27).  The Appeals Council denied Plaintiff's request for review on May 16, 2005 (Tr. 8-10) thus making the ALJ's decision the final decision of the Commissioner.  A timely appeal was then filed with this Court.

## II.  THE PARTIES' POSITIONS

Plaintiff argues that the ALJ's decision is not supported by substantial evidence and that the ALJ ignored the preponderance of the medical evidence from Plaintiff's treating psychiatrist. Defendant disputes Plaintiff's claims and argues that there is substantial evidence in the record to support the ALJ's finding that Plaintiff is not disabled within the meaning of the Act and that work exists that Plaintiff remains capable of performing.

### III.   THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1ˢᵗ Cir. 1991) (*per curiam*); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1ˢᵗ Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1ˢᵗ Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11ᵗʰ Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1ˢᵗ Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11ᵗʰ Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1ˢᵗ Cir. 1999) (*per curiam*); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11ᵗʰ Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1ˢᵗ Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6ᵗʰ Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  Seavey, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision.  Freeman v. Barnhart, 274 F.3d 606, 609-10 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause

for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-92 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Jackson, 99 F.3d at 1095.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id.  The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.    DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may

discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20

C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.      Developing the Record

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.      Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

D.      **The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  <u>See</u> 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  <u>Wells v. Barnhart</u>, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. <u>Seavey</u>, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. <u>Deblois v. Sec'y of Health and Human Servs.</u>, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. <u>Id.</u>

**E.    Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. <u>Seavey</u>, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). <u>Seavey</u>, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. <u>Id.</u>; <u>see also</u> <u>Heckler v. Campbell</u>, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. <u>Nguyen</u>, 172 F.3d at 36. In almost all of such cases, the

Commissioner's burden can be met only through the use of a vocational expert. <u>Heggarty</u>, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See <u>Ferguson v. Schweiker</u>, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.     Pain

"Pain can constitute a significant non-exertional impairment." <u>Nguyen</u>, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

-10-

(3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4) Treatment, other than medication, for relief of pain;

(5) Functional restrictions; and

(6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

## 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony can require remand so that the ALJ may "make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]." DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24, 26 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the

implication must be so clear as to amount to a specific credibility finding." <u>Foote v. Chater</u>, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

Plaintiff was thirty-four years old at the time of the ALJ hearing.  (Tr. 96).  She earned a general equivalency diploma ("GED") and has a two-year college education.  (Tr. 35, 116).  Plaintiff has performed past relevant work as a transcriptionist, accounts receivable clerk and customer service representative during the past few years.  (Tr.127-134).  Plaintiff last worked doing medical transcription in February 2002.  (Tr. 127).

Plaintiff initiated treatment with her current treating physician, Dr. Daniel Shreve on April 10, 1997.  (Tr. 170).  In March 1998, Plaintiff reported some difficulty handling stress at home and work (Tr. 174) and was prescribed Paxil on March 2, 1998 to treat her emotional symptoms.  (Tr. 177).  On March 12, 1999, Plaintiff returned to Dr. Shreve reporting that she was still depressed and having a lot of difficulty coping.  <u>Id.</u>  She acknowledged getting upset, nervous and anxious with trouble coping at work.  <u>Id.</u>  Her symptoms continued to her follow-up visit in April 1998 with continuing depression.  (Tr. 178).  On April 10, 2000, Dr. Shreve recommended a psychiatrist to Plaintiff when she reported that she was "terribly depressed" and could not function.  (Tr. 179).

Plaintiff sought treatment at Family Services on July 9, 2001 with complaints of depression.  (Tr. 263-266).  On December 20, 2001, Plaintiff was assessed by a counselor with reports of increased difficulty sleeping, markedly diminished appetite and increased anxiety level.  (Tr. 300).  Plaintiff  was referred to Psychiatrist Dr. Gene Jacobs and on December 27, 2001, was evaluated by him.  (Tr. 204-208, 300).  Plaintiff described feeling frustrated, overwhelmed, tearful and anxious,

with trouble concentrating at work and sleeping at night.  (Tr. 204).  Upon examination, Dr. Jacobs noted a depressed, irritable and anxious mood with thoughts of guilt, worthlessness and helplessness. (Tr. 207).  Dr. Jacobs rendered a diagnosis of Major Depressive Disorder and Generalized Anxiety Disorder, and he prescribed medications.  (Tr. 208).

Plaintiff returned to Dr. Jacobs on May 16, 2002 at which time she complained of psychosocial issues.  (Tr. 209).  She continued to complain of anxiety, trouble sleeping, anger and irritability.  Id.  On May 30, 2002, Plaintiff was feeling better (Tr. 210); however, one month later Plaintiff was again complaining of mood swings and crying spells, as well as difficulties in her relationship with an uncle with whom she was living.  (Tr. 211).  On July 12, 2002, Plaintiff described feeling depressed, overwhelmed, frustrated and angry with trouble sleeping and focusing. (Tr. 215).  Plaintiff reported feeling no improvement with mood swings, yelling and screaming while on medication.  (Tr. 215).

During a November 7, 2002 visit with Dr. Jacobs, Plaintiff continued to feel "stressed out," irritable and panicky.  (Tr. 224).  On November 21, 2002, Plaintiff described feeling angry, depressed, tearful and anxious.  (Tr. 225).  The same issues continued through her visit of January 17, 2003 at which time she described being "disgusted and angry" over her socioeconomic situation, and having "no reason to wake up."  (Tr. 226-228).  Dr. Jacobs reported to the Disability Determination Services ("DDS") that Plaintiff presented with severe anger, mood swings, agitation, anxiety, depression, insomnia, helplessness and worthlessness.  (Tr. 203).  He noted that she was doing "somewhat better" but still had "severe symptoms."  Id.

Plaintiff noted only a minimal improvement from her prescribed medications. (Tr. 271). On September 26 and October 10, 2003, Plaintiff described herself as forgetful, unable to tolerate pressure, distractable and unable to complete tasks. (Tr. 273, 274). On December 11, 2003, Plaintiff reported stopping her medication due to her pregnancy. (Tr. 286). She continued feeling depressed and tired, and her complaints continued throughout her treatment with Dr. Jacobs. (Tr. 287-290, 293).

Plaintiff's case was transferred to David Pagliaro, LMHC. (Tr. 305). During her initial visit with Mr. Pagliaro on May 22, 2002, Plaintiff reported feeling increasingly depressed and overwhelmed with daily crying, irritability and an angry mood. (Tr. 306). Plaintiff explained that she was snappy around others and had no energy to complete tasks and that she felt that she could not work due to her poor concentration. (Tr. 306-307). At her follow-up visit on May 31, 2002, Plaintiff reported a slightly increased mood. (Tr. 308-309).

Plaintiff's mood problems continued, and on July 3, 2002, she reported ongoing problems with frustration and irritability (Tr. 315), and felt that she would be unable to work due to poor concentration and irritable mood, stating "I would lose it." (Tr. 316). Plaintiff's poor mood continued at subsequent visits when she described continuing problems with a low mood, irritability, edginess, forgetfulness, poor concentration and broken sleep. (Tr. 317-318, 320-322).

On August 26, 2002, Plaintiff was evaluated by Dr. Ronald Paolino at the request of the DDS. (Tr. 164-168). Plaintiff voiced chief complaints of "I get nervous all the time. I don't like being around people. I have a bad temper with no patience. I forget things." Plaintiff described a history of abusive relationships both in childhood and her early adult life. (Tr. 164-165).

On Mental Status Examination, Dr. Paolino reported a depressed affect and impaired concentration.  (Tr. 167).  On self report, Plaintiff described "horrible" moods, irritability and tearfulness.  (Tr. 166).  Dr. Paolino described Plaintiff as cooperative and reliable in her self-report.  (Tr. 166).  He rendered a diagnostic impression of Post Traumatic Stress Disorder, Major Depressive Disorder and Panic Disorder with Agoraphobia.  (Tr. 167).  Dr. Paolino rendered a GAF (or Global Assessment Functioning) rating of 47.  (Tr. 168).

Between August 21, 2002 and January 22, 2003, Plaintiff continued to see Mr. Pagliaro who continued to record her complaints of frustration, irritable mood, depression and hopelessness.   (Tr. 323-349).  On January 22, 2003, Mr. Pagliaro noted "minor stress causes ↑anger, ↑tensions, affect irritable around children."  (Tr. 348-349).

At the initial level of Plaintiff's application process, Maryann Gnys, Ph.D., reviewed the case on October 25, 2002.  (Tr. 184-201).  Dr. Gnys opined that Plaintiff was suffering from an Affective Disorder with depressive syndrome including pervasive loss of interest in almost all activities, sleep disturbance, decreased energy, and difficulty concentrating or thinking (Tr. 187) as well as an Anxiety-Related Disorder with generalized persistent anxiety accompanied by motor tension, autonomic hyperactivity and apprehensive expectation, in addition to recurrent and intrusive recollections of a traumatic experience which were the source of marked distress.  (Tr. 189).  In reviewing the medical records, Dr. Gnys appeared to simply review the consultative evaluation of Dr. Paolino and two progress notes from Family Services.  (Tr. 196).  In summary, Dr. Gnys stated "claimant's allegations are credible and supported by medical evidence from psychiatric CE and treatment notes."  (Tr. 200).

A second DDS Consultant, Dr. Susan Diaz Killenberg, reviewed the file was on March 10, 2003. (Tr. 229-246). Dr. Diaz Killenberg also felt that Plaintiff suffered from an Affective Disorder with pervasive loss of interest in almost all activities, sleep disturbance, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking. (Tr. 232). Additionally, Dr. Diaz Killenberg opined that Plaintiff was also suffering from an Anxiety-Related Disorder with generalized persistent anxiety accompanied by motor tension, autonomic hyperactivity, apprehensive expectation and vigilance and scanning, as well as recurrent severe panic attacks and recurrent and intrusive recollections of a traumatic experience. (Tr. 234). On functional assessment, Dr. Diaz Killenberg opined that Plaintiff would have moderate restrictions in maintaining social functioning, and maintaining concentration, persistence or pace. (Tr. 239). In rendering her opinion, she reviewed the consultative evaluation of Dr. Paolino, progress notes of Plaintiff's general physician, and progress notes of her Psychiatrist, Dr. Jacobs. (Tr. 241-242). Dr. Diaz Killenberg concluded that Plaintiff's anxiety left her poorly suited for work with the public. (Tr. 246). She was considered to tolerate only limited interactions with co-workers and supervisors, wherein she would be irritable and anxious in these interactions. Id. Dr. Diaz Killenberg felt that Plaintiff "may miss one to three days of work per month due to occasional disrupted sleep and low energy." (Tr. 246).

On April 17, 2003, Plaintiff presented to the Butler Hospital with a chief complaint of depression and suicidal ideation. (Tr. 252). On mental status examination, her mood was described as sad, depressed, angry and irritable. (Tr. 253). Plaintiff described significant difficulties with her neighbor and homicidal feelings towards this individual. (Tr. 252). Her medications were adjusted, and she was discharged five days later with instructions to follow-up with her outpatient treatment

sources. (Tr. 254). A primary diagnosis of Major Depressive Disorder, single episode, severe was rendered. (Tr. 260).

By August 13, 2003, Plaintiff had discontinued her medications and reported broken sleep, irritable mood, poor judgment, poor insight, apathy and being easily agitated. (Tr. 370). While Plaintiff felt that her medications were only slightly helpful, she was still encouraged to resume them. (Tr. 371). The following week, her counselor reported that she appeared better, but continued with an irritable mood, forgetfulness and anxiety-related somatic complaints (Tr. 372). In October 2003, Plaintiff's therapist discussed with Plaintiff her thinking that the world "should be more considerate" of her needs. (Tr. 377).

Dr. Jacobs completed two functional assessments in connection with Plaintiff's application for SSI benefits. On September 26, 2003, Dr Jacobs opined that Plaintiff would have a severe limitation in her ability to understand, carry out and remember instructions, respond appropriately to supervision and co-workers and respond to customary work pressures. (Tr. 261-262). On May 27, 2004, Plaintiff's limitations were considered moderately severe in the areas of understanding, carrying out and remembering instructions and responding to customary work pressures, whereas the limitation continued to be severe in the areas of responding appropriately to supervision and co-workers. (Tr. 295-296). In other words, Dr. Jacobs saw improvement between September 2003 and May 2004.

On January 20, 2004, Plaintiff saw a new therapist, Gladys Cano, LICSW after Mr. Pagliaro left the Family Services agency. (Tr. 387). Ms. Cano observed, "client appeared depressed, tearful at times, very hopeless, client seems very dependent on other people to make things better." (Tr.

387).  After making progress at her second visit on February 3, 2004, Plaintiff continued to report

high levels of anxiety, depression and irritability with frequent mood changes.  (Tr. 390).  She felt

that her medications were not working and that there was nothing positive in her life.  Id.

Plaintiff returned to Ms. Cano on March 16, 2004 reporting ongoing problems with feeling

overwhelmed.  (Tr. 393).  Ms. Cano observed that Plaintiff had a hard time with suggestions and

seemed to "want someone to just take care of her problems without needing to do much herself."

Id.  In the final visit of record on May 5, 2004, Plaintiff expressed hope that she would receive her

SSI and move to Florida with her family, (Tr. 396), and she continued to feel overwhelmed and

tearful.

A.    There is No Basis to Conclude that the ALJ Ignored the Preponderance of the
      Medical Evidence

The ALJ decided this case adverse to Plaintiff at Step 5.  The ALJ found that Plaintiff had

no exertional limitations and the RFC to perform a wide range of work at all exertional levels.  (Tr.

26, Findings 5 and 12).  The ALJ did, however, find that Plaintiff's depression, post-traumatic stress

disorder and bipolar disorder, were "severe" conditions within the meaning of 20 C.F.R. §

416.920(b).  Id., Finding 2.  In assessing Plaintiff's RFC, the ALJ concluded that Plaintiff had non-

exertional limitations resulting in moderate impairments in maintaining attention and concentration,

dealing appropriately with the public, co-workers and supervisors, and dealing with ordinary

requirements of attendance, perseverance and pace.  Id., Finding 5.  Based on this RFC, the VE

testified that Plaintiff could not perform her past relevant work but could perform other work

existing in the national economy.  (Tr. 57-58).  The ALJ accepted the VE's testimony on this point

and rendered a non-disability finding.

-18-

Plaintiff makes one broad claim of error in this case.  She asserts that the ALJ erred by ignoring portions of the records favorable to her and by failing to adequately consider all of the evidence.  After thoroughly reviewing the record, the ALJ's decision and Plaintiff's memorandum, this Court concludes that Plaintiff's argument is unsupported and the ALJ's decision is supported by substantial evidence.

The ALJ did not "ignore" evidence but rather exercised his discretion to weigh the evidence.[1] The ALJ's decision includes a thorough and detailed discussion of the medical evidence related to Plaintiff's mental health issues (Tr. 20-23) and an explanation of the basis for his conclusion that "the record does not support more than moderate psychiatric limitations...." (Tr. 23-24).  Plaintiff argues that the ALJ improperly gave "enormous weight" to the GAF assessments of her treating psychiatrist, Dr. Jacobs.  Pl.'s Mem. at p. 15.  Although the ALJ did refer repeatedly to Dr. Jacob's GAF assessments of 55 indicating only moderate limitations, those assessments are contained in the record and thus must be considered by the ALJ.  See 20 C.F.R. § 417.920(a)(3).

Dr. Jacobs was not the only medical professional to assess a similar GAF finding.  For instance, Dr. Carpenter of Butler Hospital concluded that Plaintiff's GAF was 55 upon her discharge on April 21, 2003.  (Tr. 254).  Plaintiff further speculates that Dr. Jacobs did not even assess her GAF scores because the score always remained at 55.  In addition to being completely speculative,

---

[1] Plaintiff's reliance on Lord v. Apfel, 114 F. Supp. 2d 3, 12-14 (D.N.H. 2000), is misplaced as that case is distinguishable.  In Lord, a "substantial" amount of post-hearing evidence was presented to the ALJ.  The ALJ did not mention any of this evidence in rendering his decision.  Although the Court noted that the First Circuit does not require that an ALJ's decision directly address "every piece of evidence," it remanded the case because the ALJ's failure to mention any of the post-hearing evidence suggested the "possibility" that it may have been overlooked.  Id. at 13 and 16.

Plaintiff's argument is inaccurate. In particular, on December 27, 2001, Dr. Jacobs assessed Plaintiff's GAF at 50. (Tr. 208).

The ALJ did not err in finding that the record supported only a finding of moderate psychiatric limitations. In addition to the GAF scores of 55 assessed by Drs. Jacobs and Carpenter, the DDS consultants, Drs. Gnys and Diaz Killenberg, found either no or moderate psychiatric limitations (Tr. 198-199, 243-244) with a single exception in Dr. Diaz Killenberg's report. (Tr. 244).

Finally, Plaintiff criticizes the ALJ's failure to specifically consider the statement of Dr. Diaz Killenberg that she "may miss 1-3 days of work per month due to occasional disrupted sleep and low energy." (Tr. 246). Although it is correct that the ALJ did not specifically address Dr. Diaz Killenberg's attendance prediction, that failure does not warrant reversal or remand. First, the First Circuit has held that an ALJ's decision need not directly address every piece of evidence in the administrative record. See Shaw v. Sec'y of Health and Human Servs., 25 F.3d 1037, 1994 WL 251000, at *5 (1st Cir. June 9, 1994) (per curiam); and Rodriguez v. Sec'y of Health and Human Servs., 915 F.2d 1557, 1990 WL 152336, at *1 (1st Cir. Sept. 11, 1990) (per curiam). Second, Dr. Diaz Killenberg does not indicate what type or level of work would result in an absenteeism rate of 12-36 days per year and otherwise provides no specific support for her conclusion that Plaintiff "may" miss work at that rate. Thus, the ALJ did not err by failing to comment on or credit this single piece of evidence.

Plaintiff has been faced with significant challenges in raising her children and has persevered despite having very limited and inconsistent support from the fathers of her children. Plaintiff has

also reportedly been the unfortunate victim of past incidents of physical and emotional abuse.  While

Plaintiff's situation is sympathetic, that fact alone does not entitle her to disability benefits under

the Act.  As correctly noted by the ALJ, the Act defines disability as the physical or mental inability

to engage in <u>any</u> substantial gainful activity.  (Tr. 18).  After reviewing the record as a whole, this

Court cannot say that the ALJ's non-disability finding is not supported by fact or law, or that the

explanation of his reasoning was legally inadequate.  Thus, the ALJ's decision must be affirmed.

## VI.    CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for an Order Affirming

the Decision of the Commissioner (Document No. 14) be GRANTED and that Plaintiff's Motion

to Reverse and/or Remand (Document No. 11) be DENIED.  Final judgment shall enter in favor of

Defendant.


    /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
September 11, 2006